UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC LEE HACKETT, | ) CV F 01 5997 REC SMS HC |
| Petitioner, | ) |
| | ) FINDINGS AND RECOMMENDATION |
| v. | ) REGARDING PETITION FOR WRIT OF |
| | ) HABEAS CORPUS |
| CHRISTOPHER JOHNSON, | ) |
| Parole Officer, | ) |
| | ) |
| Respondent. | ) |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on remand from the Ninth Circuit Court of Appeals. This action has been referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

**PROCEDURAL HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Fresno, following his plea of no contest to sale of a controlled substance in violation of Cal. Health and Safety Code § 11352, sale of a substance falsely represented as a controlled substance in violation of Cal. Health and Safety Code

---

[1] This information is derived from the third amended petition for writ of habeas corpus, Respondent's motion to dismiss, Respondent's answer to the petition, and Petitioner's traverse.

1  § 11355, and possession of drug paraphernalia in jail in violation of Cal. Penal Code § 4573.8.  See
2  Exhibit 2, Respondent's Motion to Dismiss (hereinafter "Motion").  Petitioner also admitted to
3  having served two prior prison terms under Cal. Penal Code § 667.5(B).  Id.  On January 26, 1998,
4  Petitioner was sentenced to serve a determinate term of 8 years and 4 months in state prison.  Id.
5  Judgment was entered on January 28, 1998.  Id.

6  Petitioner appealed his conviction.  On June 4, 1999, the California Court of Appeals, Fifth
7  Appellate District (hereinafter "5th DCA"), affirmed the conviction, but vacated the sentence.  See
8  Exhibit 3, Motion.  The 5th DCA remanded the matter to the trial court with directions to sentence
9  Petitioner consistent with the indicated sentence or to permit him to withdraw his pleas and
10  admissions.  Id.

11  On August 25, 1999, Petitioner was returned to the trial court and placed on probation.  See
12  Exhibit 4, Motion.  On the same date, Petitioner was ordered to report to probation on or before
13  August 27, 1999; however, Petitioner failed to comply.  Id.  On September 24, 1999, Petitioner failed
14  to appear at a court ordered review hearing.  Id.  On June 6, 2000, Petitioner was resentenced to the
15  previously stayed term of 8 years and 4 months, after his parole was revoked for having violated the
16  trial court's orders.  See Exhibit 1, Motion.

17  Petitioner did not file a direct appeal with the 5th DCA or a petition for review with the
18  California Supreme Court following resentencing.

19  On April 14, 2000, Petitioner filed a petition for writ of habeas corpus with the California
20  Supreme Court.  See Exhibit 6, Motion.  On August 9, 2000, the petition was denied.  Id.

21  On November 21, 2000, Petitioner filed a petition for writ of habeas corpus in the 5th DCA.
22  See Exhibit 7, Motion.  The petition was denied on February 1, 2001.  Id.

23  On April 12, 2001, Petitioner filed a petition for writ of mandate in the 5th DCA.  See Exhibit
24  8, Motion.  The petition was denied on April 19, 2001.  Id.

25  On May 21, 2001, Petitioner filed a petition for writ of habeas corpus in the California
26  Supreme Court.  See Exhibit 9, Motion.  The petition was denied on November 20, 2001.  Id.

27  On October 18, 2001, Petitioner filed a petition for writ of mandate in the 5th DCA.  See
28  Exhibit 10, Motion.  The petition was denied on October 25, 2001.  Id.

1    On May 31, 2001, Petitioner filed a federal petition for writ of habeas corpus in the United States District Court for the Southern District of California. By order of the court dated July 24, 2001, the action was transferred to the Fresno Division of the Eastern District of California. On February 11, 2002, the action was reassigned to the undersigned.

On February 25, 2002, this Court conducted a preliminary review of the petition and found it to be deficient. Consequently, Petitioner was ordered to file a first amended petition for writ of habeas corpus.

On April 22, 2002, Petitioner filed an amended petition for writ of habeas corpus in this Court.

On August 22, 2002, Respondent filed a motion to dismiss the petition for violating the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1), for failure to adequately set forth grounds for relief, and for filing a deficient petition. Petitioner did not file an opposition to Respondent's motion to dismiss.

On October 1, 2002, this Court issued a Report and Recommendation that recommended Respondent's motion to dismiss be granted on all grounds. Petitioner did not file objections to the Report and Recommendation.

On November 20, 2002, the District Court adopted the Report and Recommendation and dismissed the petition with prejudice. Judgment was entered on November 21, 2002.

On November 29, 2002, Petitioner filed a notice of appeal.

On June 21, 2004, the Ninth Circuit Court of Appeals granted the parties' joint motion for summary reversal and remand. The Ninth Circuit found that the limitations period did not commence until the trial court resentenced Petitioner following remand from the California Court of Appeals, Fifth Appellate District (hereinafter "5th DCA").[2]

On July 15, 2004, this Court issued an order notifying Petitioner that the Ninth Circuit's reversal was based solely on the computation of the limitations period, and the petition remained dismissed for failure to state cognizable federal claims and failure to name a proper respondent.

---

[2] This Court had found that the limitations period commenced on the date the 5th DCA issued its opinion. The 5th DCA had affirmed the conviction in all respects, but remanded the case for resentencing.

1  Petitioner was granted leave to file a second amended petition.

2      On July 23, 2004, Petitioner filed a second amended petition. Following a review of the
3  petition, on July 29, 2004, the Court issued an order directing Petitioner to file a third amended
4  petition, because the second amended petition failed to state cognizable federal claims and failed to
5  name a proper respondent.

6      On August 10, 2004, Petitioner filed a third amended petition. The petition contained the
7  following claims: 1) "Conviction obtained by use of coerced confession"; 2) Conviction obtained by
8  a violation of the protection against double jeopardy"; 3) "Silence and concealment"; 4) "Excessive
9  time"; 5) "Violation of Eighth Amendment subjecting Petitioner to cruel and unusual
10 punishment . . . ."; 6) "Violation of the Sentencing Act"; 7) "Violation of the 14th Amendment"; 8)
11 "Violation of the 5th Amendment"; and 9) "State impediment."

12     On August 20, 2004, the Court issued a Findings and Recommendation that recommended
13 Grounds Three, Four, Six, Eight and Nine be dismissed for failure to state grounds cognizable in a
14 federal habeas action. On November 16, 2004 the District Court adopted the Findings and
15 Recommendation in full and dismissed the above grounds.

16     On April 25, 2005, Respondent filed an answer to the petition. Petitioner filed a traverse on
17 March 7, 2005, prior to the answer.

18                      **FACTUAL BACKGROUND**

19 The following factual summary is taken from the probation officer's report:

20     On November 7, 1996, a correctional officer at the Fresno County Jail searched
    defendant Hackett in the booking area of the jail as the defendant had been transported from
21     the Taft State Prison by the Tri-County Extradition Company due to two misdemeanor
    warrants pending in Fresno. The defendant was told to remove his shoes. The correctional
22     officer then lifted the insole of the defendant's shoes. In the left shoe, he found two
    hypodermic needles under the insole. The defendant stated that his mother had mailed him
23     the clothes at Taft State Prison, and that the shoes belonged to his brother.

24     On January 6, 1997, two confidential informants equipped with a wire transmitting
    device and $20 in narcotic buy money were walking westbound on Dorothy Street,
25     approaching Clara Street. They saw a grey LTD containing two adult males, one of whom
    was subsequently identified to be defendant Eric Hackett. The LTD pulled up next to the
26     confidential informants and the subjects asked, "What do you need?" The confidential
    informants asked for $20 worth of rock cocaine and the driver, defendant Hackett, handed
27     two pieces of rock cocaine to them. He identified himself as "Lee." The presumptive test of
    the alleged cocaine was inconclusive. No controlled substance was detected.
28

>On January 7, 1997, two confidential informants were equipped with a wire transmitting device and were given $20 of Fresno County narcotics buy funds for the purchase of rock cocaine. They walked southbound on South Bardell and again made contact with "Lee" who was a passenger in the LTD with an adult female acting as driver. The confidential informants were approached by "Lee," the defendant, and they asked for $20 worth of "D," a street term for "Dove" or cocaine. The confidential informant observed as the defendant retrieved a clear plastic sandwich bag from his right sock. The baggie contained a couple of small pieces of what appeared to be rock cocaine. The defendant handed one of the rocks to the confidential informant in exchange for $20 worth of narcotics buy funds. The defendant then walked with the confidential informant northbound on Bardell until he entered a residence there. The presumptive test positively confirmed the substance sold by the defendant to be .194 grams of cocaine base. On the following day, the confidential informant identified a photograph of the defendant to be the person known to him as Lee.

(CT[3] 87-88.)

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

---

[3]"CT" refers to the Clerk's Transcript on Appeal previously lodged with this Court.

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

A. Ground One

In his first ground for relief, Petitioner claims his no contest pleas were coerced by his defense attorney in violation of his constitutional right to due process. Petitioner also contends the trial court erred in denying his motion to withdraw his plea in violation of the Sixth Amendment.

1. Relevant State Court Proceedings

On November 24, 1997, during a change of plea hearing, Petitioner entered into a plea agreement with the court whereby Petitioner would plead no contest to the charges and be placed on probation for five years with the understanding that he successfully complete a six month inpatient, six month outpatient drug treatment program. The following discussion occurred:

> THE COURT: All right. My understanding then is you want to plead straight up. That I would be indicating to you that unless there is something that I don't expect in your probation report that you would be stipulating to the aggravated term of eight years, four months. I would stay it. Place you on five years formal probation with terms and conditions, including a six - - a successful completion of a six-month in-patient, six-month out-patient drug program, which you desperately need.
> Now, that's my understanding of the offer. Also, that you would be waiving your credits, your time credits. And you would be waiving your appellate rights.
> Now, are you sure you want to do this?

1  THE DEFENDANT: Yeah.

2  THE COURT: Okay, Now, have you had enough time to talk with your lawyer?

3  THE DEFENDANT: Yes.

4  THE COURT: You do understand that if you change your plea there is not going to be a trial by judge or by jury, which would be your choice, but there's no trial because there's nothing to prove.
   You understand?

6  THE DEFENDANT: Yes.

7  THE COURT: In other words, the District Attorney is not going to put on a trial just for fun. There's nothing to do if you change your plea.
   Do you know that?

9  THE DEFENDANT: Yes.

10 THE COURT: So you're waiving any type of a trial. Do you know that?

11 THE DEFENDANT: Yes.

(RT[4] 303-304.)

At this point, the court explained to Petitioner his trial rights. (RT 304-305.) Petitioner stated that he understood them and that he wished to give them up. (RT 305.) The court then stated it would read Petitioner the charges filed against him. (RT 305.) Petitioner pleaded no contest to all charges and admitted the prior prison term allegations against him, whereupon the court "accept[ed] the knowing, intelligent and voluntary waiver of rights, knowing, intelligent and voluntary change of plea." (RT 306-308.) The court ordered Petitioner to report to the probation department within one court day of his release from custody to make an appointment. (RT 308.) Petitioner was ordered to return to court on December 24, 1997, at 8:30 a.m. (RT 308.)

At the sentencing hearing held on December 24, 1997, the court noted that Petitioner had not reported to the probation department upon his release from custody as the court had ordered. (RT 904.) Petitioner was taken into custody and the matter was referred to probation for a report and recommendation. (RT 905.) The sentencing hearing was continued to January 26, 1998. (RT 906.)

On January 26, 1998, the continued sentencing hearing was held. (RT 1201.) The Court found that Petitioner had violated the conditions of his plea. (RT 1205-1206.) Petitioner was

---

[4]"RT" refers to the Reporter's Transcript on Appeal lodged with the Court.

1  sentenced to a total aggregate term of eight years and four months in state prison. (RT 1211.)

2  Petitioner moved to withdraw his plea, but the court denied the motion. (RT 1208, 1213.)

3       On March 19, 1998, Petitioner filed a notice of appeal. (CT 81.) On June 4, 1999, the 5th

4  DCA issued its unpublished opinion affirming the judgment and vacating the sentence. See Lodged

5  Item No. 3, Answer. The appellate court found that Petitioner had not been fully advised of the

6  consequences of his failure to abide by the plea agreement and present to the probation department

7  within one day. Id. On remand, the sentencing court was ordered to sentence Petitioner consistent

8  with the indicated sentence or to permit Petitioner to withdraw his pleas and admissions. Id.

9       On August 25, 1999, Petitioner appeared for resentencing, whereupon the following colloquy

10  took place:

11      THE COURT: Okay. I'm just reviewing the original pre-sentence report and I want to be sure I understand what was anticipated there, and that was that the defendant would be sentenced

12  to the aggravated term of five years in Court Three, with enhancements of two additional years, I guess, for two prison priors. That would give us seven years. Then he was to receive

13  a consecutive midterm of eight months for Count Two, and a consecutive midterm of eight months for the offense in Count One, arriving at the eight-year four-month term, all of which

14  was to be stayed and he was to be admitted to a grant of probation.

15      MR. KOOYUMJIAN [Defense counsel]: That's correct, Your Honor. And there were further - - that is the - - according to the RPO, the plea agreement was that he would be released

16  under a Cruz waiver type of a condition.

17      THE COURT: Right. But I've reviewed the opinion and the court has ordered this - - the Court of Appeals ordered me to impose that sentence or give the defendant the opportunity to

18  withdraw his plea, start all over again.

19      MR. KOOYUMJIAN: Correct.

20      THE COURT: I don't have any problem in imposing that sentence that I just indicated.

21      MR. SINGER [Prosecutor]: That is what the People anticipate.

22      THE COURT: Okay.

23      MR. KOOYUMJIAN: And Mr. Hackett is choosing to have that sentence imposed and being placed on probation with the understanding that he'll participate in - - in a drug treatment

24  program as ordered by the court and we would - - I also informed him we would have a review hearing on the matter at the pleasure of the court.

25
26      . . . .

    THE COURT: I don't have a problem in releasing him, as long as he understands if he

27  doesn't complete the six-month residential and six-month follow up, that he's going to be getting the eight-years four-months.

28

1 . . . .

2 THE COURT: And we'll set a review within 30 days with the understanding that within two days of Mr. Hackett's release, that is, by this Friday, he has to report to probation at Kern Street and then contact a program that they'll refer him to.

4 MR. KOOYUMJIAN: That's acceptable, Mr. Hackett?

5 THE DEFENDANT: Yes.

6 See Lodged Item No. 15, Answer.

7 The Court then sentenced Petitioner to eight years and four months in state prison, stayed that sentence, and granted probation for a term of three years. Id. Petitioner was ordered to "report to [his] probation officer no later than this Friday, August the 27th at 12:00 noon." Id. For Petitioner's own benefit, defense counsel verified the probation office was located on the eighth floor of the courthouse. Id. The court further ordered Petitioner to "enroll in and successfully complete a six-month residential and then a six-month aftercare drug treatment or substance abuse treatment program as approved by [his] probation officer." Id. The court set a review hearing for September 24, 1999. Id.

On August 27, 1999, Petitioner did not appear at the probation office. See Lodged Item No. 4, Answer. On September 24, 1999, Petitioner failed to appear at the review hearing. Id. Therefore, the court issued a no-bail bench warrant for Petitioner's arrest. Id. Petitioner remained at large until he was apprehended on March 17, 2000, on an unrelated charge. Id. On June 6, 2000, Petitioner was sentenced to the previously stayed term of eight years and four months, with credit for time served. Id.

### 2. Coerced Plea

This claim was first presented in a petition for writ of habeas corpus to the 5th DCA on November 21, 2000. See Lodged Item No. 6, Answer. On February 1, 2001, the 5th DCA summarily denied the claim. Id. On May 21, 2001, Petitioner raised the claim in a petition for writ of habeas corpus before the California Supreme Court. See Lodged Item No. 7, Answer. The petition was summarily denied on November 20, 2001. Id. In such circumstances where the states court supplies no reasoned decision, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th

Cir.2000) ("Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."); see also, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002). That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

A plea of guilty is constitutionally valid only to the extent it is "voluntary" and "intelligent." Brady v. United States, 397 U.S. 742, 748 (1970). In determining whether a plea was knowingly, voluntarily and intelligently made, a reviewing court must accord a strong presumption of verity to the declarations made by a defendant in open court. Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[R]epresentations [made by] the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. Furthermore, Petitioner's allegations of a coerced plea must be specific and point to a real possibility of a constitutional violation. "[S]ubsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. at 74, *citing* Machibroda v. United States, 368 U.S. 487, 495-496 (1962); Price v. Johnston, 334 U.S. 266, 286-287 (1948).

In the instant case, Petitioner has offered no evidence in support of his claim that his convictions were obtained by use of a coerced confession. There is nothing to indicate that Petitioner's plea was anything other than knowing, voluntary, and intelligent. In fact, the record conclusively demonstrates otherwise. As noted above, the sentencing court, defense counsel, and the prosecutor repeatedly admonished Petitioner that he would be sentenced to eight years and four months in state prison if he did not abide by the sentencing court's orders. Both Petitioner and defense counsel stated on the record that they felt the plea bargain was in Petitioner's best interest. (RT 303-305.) The fact that defense counsel urged Petitioner to take the plea does not establish that the plea was coerced. There must be some evidence that Petitioner's will was overcome, and in this case, there is none. Brady v. United States, 379 U.S. 742, 749 (1970).

Accordingly, the state court rejection of this claim was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States, nor did the state court resolution result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim should be denied.

### 3. Motion to Withdraw Plea

In its opinion remanding the case to the sentencing court, the 5th DCA directed the court "to sentence [Petitioner] consistent with the indicated sentence or to permit him to withdraw his pleas and admissions." See Lodged Item No. 3, Answer. At the August 25, 1999, review hearing following remand, the sentencing court chose to impose the indicated sentence. See Lodged Item No. 15, Answer. This was agreeable to all parties, including Petitioner. As part of the plea, Petitioner was ordered to present himself to the probation office on or before August 27, 1999, and he was ordered to report to court on September 24, 1999, for a review hearing. Id. Petitioner violated both orders, whereupon his probation was revoked. See Lodged Item No. 4, Answer.

Under California law, "the court may, . . ., for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted . . . . This section shall be liberally construed to effect these objects and to promote justice." Cal. Penal Code § 1018. Accordingly, the defendant must show good cause to withdraw his plea of guilty. People v. Brotherton, 239 Cal.App.2d 195, 201 (1966) ("The liberality, to which reference is made, is to be applied in determining whether the established facts constitute the good cause required by the statute. It does not relieve the applicant from coming forward with requisite proof that the ends of justice will be subserved by permitting him to change his plea from guilty to not guilty.")

In the instant case, the state court in its discretion did not find good cause to withdraw the plea of guilty. This is understandable given the many instances Petitioner was admonished of the terms of his plea bargain. In any case as discussed by Respondent, the claim does not present a federal question. The issue involves a discretionary decision under state law, and generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a

1   constitutional violation, may not be corrected on federal habeas"). No federal question is presented
2   here because Petitioner was fully informed of the plea bargain and the consequences he faced if he
3   failed to abide by the agreement. United States v. Amador-Leal, 276 F.3d 511, 514 (9th Cir.2001);
4   Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir.1988).

5       The state court rejection of this claim was not contrary to, or an unreasonable application of,
6   clearly established Federal law, as determined by the Supreme Court of the United States, nor did the
7   state court resolution result in a decision that was based on an unreasonable determination of the
8   facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim should be denied.

9       B. Ground Two

10      In his second ground for relief, Petitioner contends he was subjected to double jeopardy in
11  violation of the Constitution when he was resentenced by the sentencing court following remand
12  from the 5th DCA. In support of his contention, Petitioner points to the issuance of a new number
13  from the California Department of Corrections when he was placed in custody after violating
14  probation a second time.

15      The Double Jeopardy Clause of the Fifth Amendment to the Constitution provides that no
16  "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." The
17  clause prohibits multiple punishments for the same offense. United States v. DiFrancesco, 449 U.S.
18  117, 127-28 (1980). Imposition of a new sentence on remand constitutes a second punishment in
19  violation of the Double Jeopardy Clause only if the defendant has a legitimate expectation of finality
20  in his original sentence by the time his new sentence is imposed. United States v. Radmall, 340 F.3d
21  798, 800 (9th Cir.2003); Stone v. Godbehere, 894 F.2d 1131, 1135 (9th Cir.1990). A defendant has
22  no legitimate expectation of finality in a sentence which he places in issue by direct appeal. United
23  States v. Moreno-Hernandez, 48 F.3d 1112, 1116 (9th Cir.1995). Here, Petitioner directly appealed
24  his sentence, and therefore, can have no legitimate expectation of finality. Therefore, the imposition
25  of a new sentence on remand cannot constitute a violation of the Double Jeopardy Clause.

26      The state court rejection of this claim was not contrary to, or an unreasonable application of,
27  clearly established Federal law, as determined by the Supreme Court of the United States, nor did the
28  state court resolution result in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented. See 28 U.S.C. § 2254(d). Thus, the claim should be denied.

### C. Ground Five

In his fifth ground for relief,[5] Petitioner claims his custody and future parole constitute cruel and unusual punishment in violation of the Eighth Amendment.

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may indeed violate the Eighth Amendment. In Lockyer v. Andrade, 123 S. Ct.1166 (2003), the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that a "gross disproportionality" review applies to criminal sentences for a term of years. Id. at 1173. Citing extensively to its past cases dealing with criminal sentencing and proportionality under the Eighth Amendment, the Court acknowledged that it has "not established a clear and consistent path for courts to follow." Id. The Supreme Court held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' frame work is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." Id.[6]

In the instant case, it is clear that Petitioner's sentence does not constitute cruel and unusual punishment. As discussed above, Petitioner is not serving a second and new sentence. He is serving a sentence that was corrected on remand from the appellate court. The original sentence was vacated, not the underlying conviction, and the sentencing court was directed to sentence Petitioner to the indicated sentence or permit him to withdraw his plea. As pointed out by Respondent, the fact that the current sentence is merely a corrected sentence is underscored by the fact that Petitioner was given credit for time served under the original vacated sentence.

Therefore, the state court rejection of this claim was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did the state court resolution result in a decision that was based on an unreasonable

---

[5] Grounds Three and Four as well as Grounds Six, Eight and Nine were dismissed by the District Court on November 16, 2004.

[6] The Court recognizes that other Supreme Court cases have dealt with cruel and unusual punishment. See Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263, 276 (1980). However, Rummel and Solem analyze cruel and unusual punishment in the context of recidivist statutes.

determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim should be denied.

### D. Ground Seven

In his last ground for relief, Petitioner contends his attorney was ineffective in failing to object to resentencing on remand and in failing to request that his criminal record be expunged.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). To set aside a conviction or sentence solely because the outcome would have been different, but for counsel's error, may grant the petitioner a windfall to which the law does not entitle him. Lockhart v. Fretwell, 506 U.S. 364, 369-70, 113 S.Ct. 838, 842 (1993). Thus, if the court finds that counsel's performance fell below an objective standard of reasonableness, and that but for counsel's unprofessional errors, the result of the proceeding would have been different, the

court must then ask whether despite the errors and prejudice the trial was fundamentally fair and reliable. Id.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

In this case, it is clear counsel's failures to object to resentencing and to request Petitioner's record be expunged were not error. As already discussed, there was no basis on which to object to resentencing. According to the appellate court's directives, the sentencing court had the discretion to resentence Petitioner to the indicated sentence or to permit him to withdraw his plea. The court chose the former. Petitioner himself agreed that this was in his best interest. (RT 303-305.) Counsel cannot now be faulted for this decision merely because Petitioner chose to breach his plea agreement. In addition, there was no basis on which to request that Petitioner's criminal record be expunged. Petitioner's sentence was vacated and the case was remanded for resentencing. Petitioner's convictions, on the other hand, were affirmed.

The state court rejection of this claim was not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor did the state court resolution result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). The claim should be denied.

## RECOMMENDATION

Accordingly, the Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be DENIED and the Clerk of Court be DIRECTED to enter judgment. The Court further RECOMMENDS that all pending motions be DENIED as moot.

These Findings and Recommendations are submitted to the Honorable Robert E. Coyle, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of

1  California.

2      Within thirty (30) days after being served with a copy, any party may file written objections
3  with the court and serve a copy on all parties. Such a document should be captioned "Objections to
4  Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and
5  filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.
6  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The
7  parties are advised that failure to file objections within the specified time may waive the right to
8  appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

10  IT IS SO ORDERED.

11  **Dated:   July 12, 2005**　　　　　　　　　　　　**/s/ Sandra M. Snyder**
    icido3　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE